UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DIONNE WILLIAMS and
ANTHONY WILLIAMS,
          Plaintiffs,

v.
                                           Case No. 24-cv-12700
                                           Honorable Linda V. Parker

MEMBERSELECT
INSURANCE COMPANY and
CENTRAL STATES,
SOUTHEAST AND
SOUTHWEST AREAS
HEALTH AND WELFARE
FUND, d/b/a TEAMCARE
          Defendants.
_____/

**<u>OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS
TO DISMISS [ECF Nos. 24 & 25] AND DENYING PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT [ECF No. 23]</u>**

Plaintiffs, Dionne Williams and Anthony Williams, filed suit against

Defendants on October 11, 2024.  (ECF No. 1.)  Defendant TeamCare is a self-

funded employee benefit plan administered under the terms of ERISA for the

benefit of employees and their families living in Michigan.  (ECF No. 1,

PageID.3.)  Defendant MemberSelect Insurance Company ("MSIC") sells no-fault

automobile insurance plans throughout the state of Michigan.  *Id.*  Plaintiffs allege

that Defendant TeamCare made a material misrepresentation when stating that its

health plan served as "qualified health coverage," which would be required for

Plaintiffs to opt out of Defendant MSIC's personal protection insurance benefits. *See* MICH. COMP. LAWS. § 500.3107d.

On May 14, 2025, the Court ordered Defendants to file cross-motions to dismiss to address the question of whether Defendant TeamCare's plan satisfied the criteria for "qualified health coverage" under Section 500.3107d(7)(b)(i)(A).[1] (ECF No. 21, PageID.634.)  Plaintiffs filed a motion for summary judgment on June 19, 2025.  (ECF No. 23.)  On June 20, 2025, Defendants filed individual, but comparable, motions to dismiss.  (ECF Nos. 24 & 25.)  The motions have been fully briefed.  (ECF Nos. 26-30.)  Finding the facts and legal arguments adequately presented in the parties' filings, the Court is dispensing with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f).  For the following reasons, the Court grants Defendants' motions to dismiss.

## I.      Legal Standard

A Rule 12(b)(6) motion tests the legal sufficiency of the complaint.  *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  To survive a motion to dismiss, a complaint need not contain "detailed factual

---

[1] On June 11, 2025, the Court signed a stipulated order extending the deadline for filing the motions. (ECF No. 22, PageID.636-37.)

allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not "suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557).

As the Supreme Court provided in *Iqbal* and *Twombly*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556.

In deciding whether a plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Thurman v. Pfizer, Inc.*, 484 F.3d 855, 859 (6th Cir. 2007) ("A district court considering a defendant's motion to dismiss under Rule 12(b)(6) must construe the complaint in the light most favorable to the plaintiff and accept the plaintiff's allegations as true."). This presumption is not

applicable to legal conclusions, however. *Iqbal*, 556 U.S. at 668. Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

Ordinarily, the Court may not consider matters outside the pleadings when deciding a Rule 12(b)(6) motion to dismiss. *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 88 (6th Cir. 1997) (citing *Hammond v. Baldwin*, 866 F.2d 172, 175 (6th Cir. 1989)). However, "[w]hen a court is presented with a Rule 12(b)(6) motion, it may consider the [c]omplaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to [the] defendant's motion to dismiss, so long as they are referred to in the [c]omplaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

## II.     Factual Background

### A. Statutory History

More than 50 years ago, the Michigan Legislature enacted the No-Fault Insurance Act, which was offered as "an innovative social and legal response to the long payment delays, inequitable payment structure, and high legal costs inherent in the tort (or "fault") liability system." *Shavers v. Kelley*, 402 Mich. 554, 578; 267 N.W.2d 72 (1978). The Act created a motor vehicle insurance program under which insureds could recover directly from their insurers, regardless of fault, for

4

qualifying economic losses arising from motor vehicle incidents. *McCormick v. Carrier*, 487 Mich. 180, 189; 795 N.W.2d 517 (2010). Under the Act, every Michigan motorist would be required to purchase no-fault insurance in order to legally operate a motor vehicle, and insureds would receive insurance benefits as a substitute for their common-law remedy in tort. *Shavers*, 402 Mich. at 579.

Prior to 2019, the No-Fault Insurance Act allowed all persons injured in motor vehicle accidents to receive unlimited benefits for "allowable expenses." MICH. COMP. LAWS. 500.3107(1); *see Douglas v. Allstate Ins. Co.*, 492 Mich. 241, 256; 821 N.W.2d 472 (2012). However, in 2019, the Michigan Legislature amended the Act to allow policyholders to limit or decline personal injury protection ("PIP") coverage on no-fault insurance policies, so long as the policyholder met additional criteria, including possessing "qualified health coverage." *See* MICH. COMP. LAWS. §§ 500.3107c, 500.3107d, 500.3109a.

## B. Undisputed Facts

The material facts of this matter are largely undisputed. During all relevant periods, Plaintiffs were members of, and eligible for, TeamCare's health coverage. (ECF No. 23, PageID.639; ECF No. 24, PageID.798.) They received access to this coverage through Plaintiff Anthony Williams's employment. (ECF No. 23, PageID.638.)

In June 2023, Plaintiff Dionne Williams purchased a Michigan no-fault automobile insurance policy from Defendant MSIC, which established a policy period from June 13, 2023, to December 13, 2023.  (ECF No. 23-3, PageID.673.) She elected to opt out of PIP allowable expense coverage pursuant to MICH. COMP. LAWS. § 500.3109a(2).  (ECF No. 23, PageID.639; ECF No. 23-4, PageID.685; ECF No. 24, PageID.798; ECF No. 25, PageID.816.)  In order to opt out, Plaintiffs were required to possess "qualified health coverage" as defined under Michigan's No-Fault Insurance Act.  *See* MICH. COMP. LAWS § 500.3107d(7)(b).  Under Section 500.3107d(7)(b)(i),[2] "qualified health coverage" is defined as health or accident coverage that (A) "does not exclude or limit coverage for injuries related to motor vehicle accidents" and (B) has an annual deductible of $6,000 or less per individual.

Plaintiffs requested and received a letter from Defendant TeamCare indicating that Plaintiffs' Plan constituted "qualified health coverage."  (ECF No. 23, PageID.652; ECF No. 24, PageID.798.)  The letter specifically stated that the Plan did "not exclude or limit coverage for motor vehicle accidents."  (ECF No. 23-6, PageID.692.)  Plaintiffs provided this letter to Defendant MSIC, and MSIC issued a no-fault policy that excluded Plaintiffs from all PIP medical expense coverage.  (ECF No. 24, PageID.798; ECF No. 25, PageID.817.)

---

[2] Section 500.3107d(7)(b)(ii) is not relevant to this matter.

On November 11, 2023, Plaintiffs sustained injuries in a motor vehicle collision.  (ECF No. 23, PageID.651; ECF No. 24, PageID.798; ECF No. 25, PageID.817.)  Plaintiffs do not dispute that TeamCare paid $346,349.43 in medical benefits and $8,600.20 in loss-of-time benefits on behalf of Anthony Williams, as well as $160,460.41 in medical benefits on behalf of Dionne Williams.  (*See* ECF Nos. 23 & 27.)

On May 16, 2024, Plaintiffs filed a lawsuit against the at-fault parties in the Livingston County Circuit Court.[3]  Upon receiving notice of the lawsuit, TeamCare asserted its subrogation and reimbursement rights under Section 11.14(a)[4] of the Plan and asserted a lien against any recovery.  (ECF No. 23, PageID.653; ECF No. 24, PageID.799; ECF No. 25, PageID.817.)

### C. The Parties' Arguments

Plaintiffs filed suit against Defendant MSIC and Defendant TeamCare in this Court on October 11, 2024, arguing that TeamCare's reimbursement and subrogation requirement constitutes a "limit" on coverage in violation of Section 500.3107d(7)(b)(i)(A), and that TeamCare misrepresented that the Plan did not "exclude or limit coverage for injuries related to motor vehicle accidents." (ECF

---

[3] The lawsuit initially included Defendant MSIC.

[4] Under Section 11.14(a) of the Plan, TeamCare asserts immediate subrogation and reimbursement rights to all present and future recoveries attributable to the injuries for which it paid benefits.  (*See* ECF No.7-1, PageID.118.)

No. 1; ECF No. 7-1, PageID.118-21.) Plaintiffs also take issue with TeamCare's reimbursement requirement because, although TeamCare only paid for economic losses, the Plan allows TeamCare to seek reimbursement from noneconomic damages, including pain and suffering awards.[5] (ECF No. 23, PageID.653, 656.) According to Plaintiffs, this structure "limits" coverage in violation of Section 500.3107d(7)(b)(i)(A) because it effectively requires them to pay for their own expenses out of an award intended to make them whole. (*Id.* at PageID.657.)

Defendants argue that TeamCare's Plan does not "exclude or limit coverage" under Section 500.3107d(7)(b)(i)(A) because the subrogation and reimbursement requirement has no effect on the availability, amount, or scope of an insured's coverage. (ECF No. 25, PageID.827-28.) Rather, Defendants contend that the requirement only affects the amount of the Plaintiffs' personal recovery from at-fault parties. (ECF No. 29, PageID.871.) Defendants also emphasize that subrogation and reimbursement provisions are common in ERISA plans. (ECF No. 29, PageID.870.) Finally, Defendants point to the statute's language and note

---

[5] The Court notes that Plaintiffs' challenge to the enforceability of the reimbursement provision is distinct from the narrow question that the parties were asked to brief—whether TeamCare's plan constitutes "qualified health coverage" under Michigan's No-Fault Insurance Act. *See* ECF No. 21, PageID.634. Therefore, the Court will only address the argument briefly. In *Sereboff v. Mid Atlantic Medical Services, Inc.*, the Supreme Court held that a fiduciary of an ERISA plan may seek reimbursement under § 502(a)(3) when it seeks recovery from "specifically identifiable" settlement funds, as TeamCare does here. 547 U.S. 356, 363–65 (2006). Since *Sereboff*, the Sixth Circuit has applied this requirement and has denied reimbursement when a plan fails to seek an equitable lien over an identifiable fund. *See Cent. States, Se. & Sw. Areas Health & Welfare Fund v. First Agency, Inc.*, 756 F.3d 954, 960-61 (6th Cir. 2014).

that the text contains no reference to subrogation and does not explicitly restrict post-payment reimbursement rights.  Therefore, Defendants argue that the Plan constitutes "qualified health coverage" according to the statute's plain language and expressed requirements.

The Court is persuaded by Defendants' interpretation of Section 500.3107d(7)(b).

### III.   Discussion

When interpreting a statute, a court's goal is to "ascertain the legislative intent that may reasonably be inferred from the words expressed in the statute. *Douglas*, 492 Mich. at 256 (quotation marks and citation omitted).  In so doing, a court must consider the "meaning of the critical word or phrase as well as its placement and purpose in the statutory scheme."  *Id.*  Undefined statutory terms are given their plain and ordinary meaning.  *Koontz v. Ameritech Servs, Inc*, 466 Mich. 304, 312; 645 N.W.2d 34 (2002).

The term "limit" is not defined in the statute.  Accordingly, the Court will interpret the term by applying its plain and ordinary meaning.  A "limit" is commonly described as "something that "bounds, restrains, or confines."  *Limit*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/limit (last visited June 18, 2026).  If one considers this definition with the other words found in Section 500.3107d(7)(b)(i)(A), it follows

that an insured has "qualified health coverage" if their plan does not "exclude[,] [bind, restrain, or confine] coverage for injuries related to motor vehicle accidents." MICH. COMP. LAWS. § 500.3107d(7)(b)(i)(A).

Here, upon review of the terms in Plaintiffs' Plan and Michigan's 2019 amendment to the No-Fault Insurance Act, it becomes clear that the Plan does not "limit" coverage in violation of Section 500.3107d(7)(b)(i)(A). The Act's overarching purpose is to regulate motorists' coverage status and the scope of their medical benefits. Plaintiffs do not dispute that they possessed health coverage through TeamCare's Plan at the time of the accident, nor do they dispute that TeamCare paid their expenses. They likewise do not suggest that TeamCare altered the scope or availability of their benefits simply because their injuries arose from a motor vehicle collision. Therefore, as it relates to coverage, Plaintiffs identify no action by TeamCare that limited their coverage in a manner contemplated by the statute.

Plaintiffs argue that the Plan's subrogation and reimbursement provisions operate as a limitation on coverage because any reimbursement would effectively make Plaintiffs pay for their medical expenses out of pocket. Although Plaintiffs do not expressly invoke it, their argument mirrors the federal common law "make whole" rule, which "requires that an insured be made whole before an insurer can enforce its right to subrogation under ERISA, unless there is a clear contractual

10

provision to the contrary." *Copeland Oaks v. Haupt*, 209 F.3d 811, 813 (6th Cir. 2000) (citing *Marshall v. employers Health Ins. Co.*, 1997 WL 809997 *4 (6th Cir. 1997)) (per curiam).  But the make-whole rule only governs post-payment reimbursement and therefore does not affect the scope of coverage.  Coverage is typically determined when a plan pays for medical expenses; a later effort to recoup those payments does not retroactively limit or diminish the coverage previously provided.

Moreover, nothing in the statute's text indicates that a subrogation or post-payment reimbursement provision constitutes a "limit" on underlying coverage,[6] and the Court cannot "read requirements into a statute that the Legislature did not put there." *Empire Iron Min. P'ship v. Orhanen*, 455 Mich. 410, 424; 565 N.W.2d 844 (1997); *see also Bronson Health Care Grp., Inc. v. Esurance Prop. & Cas. Ins. Co.*, 348 Mich. App. 428, 443; 19 N.W.3d 151 (2023) (noting that an interpretation of a statute is wrong if it "adds a requirement to the statute that is not discernible from the statute's text.")  The Michigan Legislature chose language directed at the availability, coverage, and terms of medical benefits offered to insureds.  Had the

---

[6] While the No-Fault Insurance Act contains a reimbursement provision in Section 500.3116, that section only applies in circumstances where a *no-fault insurer* seeks repayment of PIP benefits from a claimant's tort recovery.  *See* MICH. COMP. LAWS. § 500.3116.  This section does not restrict or otherwise apply to ERISA-regulated health plans. Additionally, because the Plaintiffs elected to opt out of PIP medical benefits, no PIP payments were made and § 3116 has no relevance to the reimbursement issue presented here.

11

Legislature intended to regulate a plan's right to reimbursement or subrogation, it would have done so expressly.

Even if one were to argue that a reimbursement provision constitutes a "limit" on coverage, that interpretation would be untenable for a self-funded ERISA plan. The Supreme Court's decision in *FMC Corp. v. Holliday* makes clear that ERISA preempts state laws that attempt to regulate the reimbursement or subrogation rights of self-funded employee benefit plans.  498 U.S. 52, 61-65 (1990).  Michigan's no-fault act cannot invalidate such provisions. Thus, even under a hypothetical interpretation treating reimbursement as a coverage limit, ERISA preemption prevents Michigan law from disqualifying a self-funded plan on that basis.

For these reasons, the Plan does not "limit" coverage because it provides medical benefits for auto-accident injuries, and its reimbursement provisions do not affect that coverage. Accordingly, the Court finds that the Plan constitutes "qualified health coverage" under Michigan's No-Fault Insurance Act.

## IV.   Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motions to Dismiss (ECF

12

Nos. 24 & 25) are **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs' motion for summary

judgment (ECF No. 23) is **DENIED**.

**SO ORDERED**.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: July 15, 2026